UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FILED
RICHARD W. NAGEL
CLERK OF COURT

2016 NOV -8 PM 3: 46

U.S. DIST COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. **1:16CR 106** |
| v. | Filed: **JUDGE BLACK** |
| USUI KOKUSAI SANGYO KAISHA, LTD., | Violation: 15 U.S.C. § 1 |
| Defendant. | |

## INFORMATION

### COUNT ONE
### CONSPIRACY TO RESTRAIN TRADE
### 15 U.S.C. § 1

THE UNITED STATES, ACTING THROUGH ITS ATTORNEYS, CHARGES:

**I.**

**Defendant and Co-Conspirators**

1. USUI KOKUSAI SANGYO KAISHA, LTD. ("Defendant") is a corporation organized and existing under the laws of Japan with its registered headquarters in Shimizu, Japan. During the period covered by this Information, the Defendant was engaged in the business of manufacturing and selling automotive steel tubes ("steel tubes") to automobile manufacturers and certain of their subsidiaries, affiliates, and suppliers (collectively, "Automobile Manufacturers") for installation in vehicles manufactured and sold in the United States and elsewhere.

2. CURTIS-MARUYASU AMERICA, Inc. ("CMA") is an Indiana corporation with its principal place of business in Lebanon, Kentucky. CMA is a wholly-owned subsidiary of MARUYASU INDUSTRIES CO., LTD. ("Maruyasu"), a corporation organized and existing

under the laws of Japan, with its principal place of business in Nagoya, Japan. During the period covered by this Information, CMA and Maruyasu were engaged in the business of selling steel tubes to Automobile Manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere. During the period covered by this Information, TADAO HIRADE, KAZUNORI KOBAYASHI, SATORU MURAI, and YOSHIHIRO SHIGEMATSU, residents and citizens of Japan, were employees of CMA and/or Maruyasu, and were responsible for the sale of steel tubes to Automobile Manufacturers. CMA, Maruyasu, Hirade, Kobayashi, Murai, and Shigematsu participated as co-conspirators in the offense charged in this Information and performed acts and made statements in furtherance thereof.

3. In addition to the Defendant, CMA, Maruyasu, Hirade, Kobayashi, Murai, and Shigematsu, other companies and other individuals located in the United States and Japan, not made defendants in this Information, participated as co-conspirators in the offense charged in this Information and performed acts and made statements in furtherance thereof.

4. Whenever in this Information reference is made to any act, deed, or transaction of any company, the allegation means that the company engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

II.

## Background of the Offense

5. During the period covered by this Information, the Defendant and its co-conspirators supplied steel tubes to Automobile Manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere. During the period covered by this Information, the Defendant and its co-conspirators manufactured and sold steel tubes: (a) in the

United States for installation in vehicles and engines manufactured and sold in the United States; (b) in Japan and elsewhere for export to the United States and installation in vehicles and engines manufactured and sold in the United States; and (c) in Japan and elsewhere for installation in vehicles and engines manufactured in Japan and elsewhere for export to and sale in the United States.

6. Steel tubes are used in fuel distribution, braking, and other automotive systems, and are sometimes divided into two categories – chassis tubes and engine parts. Chassis tubes, such as brake and fuel tubes, tend to be located in the body of a vehicle, while engine parts, such as fuel injection rails, oil level tubes, and oil strainer tubes, are associated with the function of a vehicle's engine. When an Automobile Manufacturer wishes to purchase steel tubes, it typically issues a Request for Quotation ("RFQ") to suppliers for specific models or engines. Steel tubes suppliers, such as the Defendant and its co-conspirators, submit quotations or bids to Automobile Manufacturers in response to the RFQs, and contracts are awarded to selected suppliers for the lifespan of the model or engine, often four to six years. Typically, the bidding process occurs a year or more prior to the start of production of the model or engine that is the subject of the RFQ.

### III.

### Description of the Offense

7. Beginning at least as early as December 2003 and continuing until at least as late as July 9, 2011, the Defendant and its co-conspirators knowingly entered into and engaged in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to fix prices, allocate customers, and rig bids for steel tubes sold to Automobile Manufacturers in the United States and elsewhere. The combination and conspiracy engaged in by the Defendant and its co-conspirators was in unreasonable restraint of interstate

3

and import commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). The statute of limitations for the charged offense was tolled from May 1, 2015 through December 31, 2016, pursuant to an agreement between the Defendant and the United States.

8. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendant and its co-conspirators, the substantial terms of which were to fix prices, allocate customers, and rig bids for steel tubes sold to Automobile Manufacturers in the United States and elsewhere.

### IV.

### Manner and Means of the Conspiracy

9. For the purpose of forming and carrying out the charged combination and conspiracy, the Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

(a) participated in (and directed, authorized, and consented to the participation of subordinate employees in) meetings, conversations, and communications in the United States and elsewhere concerning Automobile Manufacturers and bids, prices, and price adjustments for steel tubes to be submitted to Automobile Manufacturers in the United States and elsewhere;

(b) exchanged information and agreed (and directed, authorized, and consented to subordinate employees exchanging information and agreeing) during such meetings, conversations, and communications, on allocations of Automobile Manufacturers, as well as on bids, prices, and price adjustments to be submitted to Automobile Manufacturers in the United States and elsewhere;

4

(c) agreed, during such meetings, conversations, and communications, not to compete for certain Automobile Manufacturers or for certain business for steel tubes sold in the United States and elsewhere by not submitting prices or bids or by submitting collusive and non-competitive prices or bids to Automobile Manufacturers in the United States and elsewhere;

(d) submitted, directed, and authorized the submission of collusive and non-competitive bids, prices, and price adjustments for steel tubes;

(e) sold steel tubes to Automobile Manufacturers in the United States and elsewhere at collusive and non-competitive prices;

(f) accepted payment for steel tubes sold to Automobile Manufacturers in the United States and elsewhere at collusive and noncompetitive prices; and

(g) employed measures to conceal their conduct, including, but not limited to, avoiding the use of co-conspirators' names, meeting surreptitiously with co-conspirators, and adopting means and methods of communication designed to avoid detection.

## V.

## Trade and Commerce

10. During the period covered by this Information, the Defendant and its co-conspirators sold to Automobile Manufacturers in the United States and elsewhere substantial quantities of steel tubes in a continuous and uninterrupted flow of interstate and import trade and commerce. During the period covered by this Information, the business activities of the Defendant and its co-conspirators in connection with the manufacture and sale of steel tubes that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and import trade and commerce.

## VI.

### Jurisdiction and Venue

11. The combination and conspiracy charged in this Information was carried out in the Southern District of Ohio and elsewhere in the United States.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated:

_____
Brent Snyder
Deputy Assistant Attorney General

_____
Frank J. Vondrak
Chief, Chicago Office

_____
Marvin N. Price, Jr.
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
Michael N. Loterstein, IL Bar No. 6297060
Jonathan A. Epstein, IL Bar No. 6237031
Meagan D. Johnson, MI Bar No. P69512
Jesse L. Reising, IL Bar. No. 6321368
Ruben Martinez, Jr. TX Bar No. 24052278

Trial Attorneys
U.S. Department of Justice
Antitrust Division
Chicago Office
209 S. LaSalle, Suite 600
Chicago, IL 60604
Phone: (312) 984-7200
Fax: (312) 984-7299
Email: Michael.Loterstein@usdoj.gov

6